**TERMS FOR SETTLEMENT AGREEMENT AND RELEASE BETWEEN
ALL PLAINTIFFS AND THE GOVERNOR OF THE STATE OF MICHIGAN
IN *GARY B., ET AL. v. WHITMER, ET AL.***

**Settlement Term Sheet (dated May 13, 2020)**

Gary B.; Jessie K., a minor, by Yvette K., guardian ad litem; Cristopher R. and Isaias R., minors, by Escarle R., guardian ad litem; Esmeralda V., a minor, by Laura V., guardian ad litem; Paul M.; and Jaime R., a minor, by Karen R., guardian ad litem (the **Plaintiffs**), and Gretchen Whitmer, as the Governor of the State of Michigan (the **Governor**), hereby agree to settle all of the Plaintiffs' claims (the **Claims**) in the litigation entitled *Gary B., et al. v. Governor Whitmer, et al.*, No. 16-cv-13292 (E.D. Mich.) and Nos. 18-855/1871 (6th Cir.).

**Preamble.** In 2016, a group of students initiated a lawsuit against the Governor of the State of Michigan, the members of the State Board of Education, the Superintendent of Public Instruction, the Director of the Department of Technology, Management, and Budget, and the State School Reform/Redesign Officer. In the *Gary B.* litigation, the student Plaintiffs alleged they were denied services required for an opportunity to achieve a minimum level of education while attending Detroit schools. After over four years of litigation, and a change in administration, the State Defendants reached a settlement agreement with the student Plaintiffs.

The Governor and the Plaintiffs agree, as a matter of principle, that all children deserve an opportunity to obtain a minimum basic education. In particular, the Governor agrees that every child in the State of Michigan should have access to an educational environment in which "it is plausible to attain literacy." *Gary B. v. Whitmer*, No. 18-1855, 2020 WL 1951894, at *35 (6th Cir. Apr. 23, 2020). Toward that end, and to eliminate the possibility of protracted and costly litigation, the Plaintiffs and the Governor have agreed to this settlement. The settlement involves a series of discretionary actions, to be taken by the Governor, and does not and should not be construed in itself to bind any other branch of government in Michigan, or any individual or entity that is not a signatory to this agreement.

**Consideration.** As full and complete compromise and release of all Claims, and in consideration of the promises, covenants, representations, and warranties contained herein, and for good and valuable consideration given hereunder, the Parties hereby agree as follows:

**Settlement Terms.**

I.   **Long-Term Support for Access to Literacy**

The Governor will diligently propose and support legislation at appropriate times, as determined by the Governor in her sole discretion, before the end of her first term in office (and, if the legislation is not enacted and if she is re-elected to a second term, also during her second term of office) which, if enacted by the Legislature, would provide the Detroit Public School Community District (DPSCD) with at least $94.4M of funding for literacy-related programs and initiatives, including an appropriate combination of the following and/or similar evidence-based literacy programs and interventions:

- Multi-sensory training and certification for teachers, to improve reading intervention for struggling readers;
- Increasing Academic Interventionists (support staff to provide reading intervention to struggling readers in small groups and qualified to meet the needs of English learner students) from 1:250 students (K-8) and 1:400 (HS) to 1:150 all grade levels;
- Hiring certified teachers as full-time reading interventionists to work with struggling readers one-on-one and in small groups and to meet the needs of English learner students;
- Reducing K-3 class size to 20:1;
- Targeted improvements to facilities; and
- Books, workbooks, technology, and homework materials for students to take and use at home.

This literacy-oriented funding will be additional to all current funding provided to the DPSCD.

The Plaintiffs agree that the Governor may seek to fund the initiatives described above either through legislation that provides direct funding of the programs or legislation that would achieve comparable funding through alternative means. For example, such alternatives may include:

> an increase in per-pupil funding for pupils in the DPSCD, with multipliers for special education (70-100% based on severity of need), for English Language Learners (35-70% based on tested language needs), for students living in poverty (35%), and for students needing Career and Technical Education (10%);

> propose legislation that, if approved by the Legislature — and after DPS requests and receives an extension of the number of years in which its debt is to be repaid with its operating debt lenders — would permit DPSCD to use the difference between what would have been annually paid to service the operating debt under the current timeline ("the current amount") and what instead would be annually paid to service the operating debt under the extended timeline ("the restructured amount"), to fund literacy-related programs and initiatives described in this Section above.

The Plaintiffs agree that the Governor's obligation in this Section I is considered fulfilled by proposing and supporting legislation consistent with the terms above and that the failure of the Legislature to enact some or all of the proposed legislation will not constitute a breach of this agreement. The Plaintiffs further agree that the Governor will not be deemed non-compliant if she does not propose and support such legislation in any given year based on a good-faith determination that, under then-prevailing budgetary or other circumstances, attaining satisfactory legislation is infeasible.

II. **Prompt Executive Action**

A. Upon dismissal with prejudice of the underlying action in *Gary B, et al., v. Whitmer, et al.,* the Governor will promptly cause currently available funds in the amount of $3M to be provided in settlement of this action. Of this amount, $280,000 will be placed in trust at the Detroit Public Schools Foundation to provide each named-student-plaintiff with access to a high-quality literacy program that will assess each student-plaintiff's literacy and academic needs with individually tailored interventions; or to otherwise further their education (including education-related expenses, such as tuition, room and board, and books, and including appropriate post-secondary educational opportunities and workforce development opportunities). Each named-student-plaintiff will have access to a minimum of $40,000 to support literacy or education expenses up to 15 years after this signed agreement, and the trust's funds and earnings not used by named-student-plaintiffs after 15 years will be redistributed to DPSCD for literacy efforts via the Detroit Public Schools Foundation.

Furthermore, upon dismissal with prejudice of the underlying action in *Gary B, et al., v. Whitmer, et al.*, the Governor will promptly cause currently available funds in the amount of $2.72M to be paid to the DPSCD to an account as designated by DPSCD to be applied to each of the following literacy-related supports:

- Increased number of literacy coaches for grades K-12 with duties similar to those described in MCL § 380.1280f(1)(b);
- Increased number of interventionists (tutors) for reading assistance in DPSCD; as used herein, an interventionist (tutor) is "an individual who provides supplemental evidenced based reading intervention";
- Literacy-supporting resources for students' use at home;
- Targeted improvement to facilities; and
- Offering GED opportunities for students residing in district boundaries.

DPSCD will post all expenditures as applied above in a form and manner consistent with MCL § 388.1618, and will otherwise comply with applicable and appropriate accountability obligations.

B. The Governor agrees that, under the School Bond Qualification, Approval, and Loan Act (SBQAL), Public Act 92 of 2005, MCL § 388.1921 *et seq.,* as enacted on the effective date of this Agreement, the State Treasurer is not prohibited from prequalifying and qualifying DPSCD bonds for capital expenditures under the SBQAL program under the same terms and conditions as are applicable to any other school district in Michigan. Where these terms and conditions are satisfied, the State Treasurer will prequalify any capital bonds proposed by DPSCD in accordance with the terms that are applicable to all other school districts in Michigan, *see* MCL § 388.1926.

C. After the signing of this agreement, the Governor will promptly request the Michigan Department of Education, within a reasonable time frame, to advise school districts throughout the State as to how they might use evidence-based literacy strategies,

3

initiatives, and programs to improve access to literacy and literacy proficiency, with special attention to reducing class, racial, and ethnic disparities.

D. After the signing of this agreement, the Governor will promptly direct the State Treasurer, upon receipt of proper documentation from DPSCD, to prioritize making the determinations under MCL § 141.1638(2)(b) and (2)(f) pertaining to the waiver of oversight by the Financial Review Commission (FRC).

### III. Detroit Literacy Equity Task Force and Detroit Educational Policy Committee

A. A Detroit Literacy Equity Task Force (Task Force) will be created to conduct yearly evaluations around literacy in Detroit, and the Governor will consider and may take action on recommendations put forward by the Task Force that pertain to state-level policy. The Task Force may also provide recommendations to local stakeholders, including DPSCD, including how the monies paid to DPSCD as a result of this settlement can best be used to provide students with access to literacy.

The Task Force will comprise and be created by:

- Three student representatives;
- Three parent- or caregiver-selected representatives;
- Two local community members;
- Two literacy experts;
- Two DPSCD-selected representatives;
- Two teacher-selected representatives; and
- One paraprofessional-selected representative.

DPSCD-selected representatives will be selected at the discretion of the DPSCD superintendent and with the approval of the DPSCD Board.  Teacher and paraprofessional representatives will be selected at the discretion of the labor union(s) that represent them. All other members will be selected by the group that they represent via a process to be determined by the teacher, paraprofessional, and DPSCD members. The Task Force may elect, by a majority vote of its members, to add additional members to the Task Force representing different perspectives in the community.

The Task Force is advisory only and is not to be considered a state entity for any purposes. The obligations in Section III.A. will arise only if the Task Force is created in accordance with the requirements in Section III.A.

B. The Governor and the Superintendent of Public Instruction will consider and may take action on recommendations put forward by a Detroit Educational Policy Committee (Committee), which will play an advisory role.

The Committee will make recommendations on the stability and quality of the overall educational ecosystem in Detroit; the accessibility of a quality school to all children in Detroit; and school improvement, facilities, teaching, and educational materials.

At her discretion, the Governor will either recognize a willing entity to serve as the Committee, such as the Community Education Commission (Detroit), or create a new advisory body within the executive branch for this purpose. If the governor creates a new

advisory body, that body will exist for at least two years and will include the DPSCD superintendent; at least one representative from the DPSCD Board of Education; at least one representative from an authorizing body for public school academies within the City of Detroit; at least one representative from a public school academy operator within the City of Detroit; at least one representative from a labor union that represents Detroit school teachers; at least one representative from a labor union that represents Detroit school support staff; at least one representative from the Mayor's Office of the City of Detroit; at least one representative from a group representing parents and students in the City of Detroit; and at least one community leader in the City of Detroit.

## IV.  Settlement and Dismissal Process

**Voluntary Dismissal.** Promptly after entering this Settlement Agreement, Plaintiffs will file appropriate motions or notices to voluntarily dismiss their appeal and the underlying case with prejudice as to all Defendants and without costs or attorney fees assessed to any party.

**Limitations on Additional Litigation.**  Plaintiffs hereby covenant that they will refrain from commencing any action or proceeding, or prosecuting any pending action or proceeding, on account of any matter released hereunder. Plaintiffs and Defendants each further covenant that in this litigation they will not make any argument, either in writing or orally, to any court before which this case is or may be pending, other than to defend this settlement, to explain why this case is moot, and to explain the consequences of this case being moot for the court's disposition of this case (including with respect to any motions by non-signatories for further litigation or to intervene or otherwise participate in this case).

**General Release.** Except for the obligations under this Agreement, Plaintiffs, for themselves, and their agents, representatives, beneficiaries, insurers, attorneys, predecessors, devises, heirs, trustees, personal representatives, successors and assigns, hereby release and forever discharge the all Defendants and the State of Michigan and its departments, commissions, boards, institutions, arms and agencies, and their respective past, present, and future governors, directors, officers, employees, attorneys, agents, representatives, independent contractors, employees of independent contractors, predecessors- and successors-in-interest, assigns, indemnitors, and insurers from any and all known and unknown claims that Plaintiffs asserted in this action or could have asserted in this action. All Defendants and the State of Michigan are considered third-party beneficiaries of this General Release Provision and may independently enforce the terms of this Release as if they were parties to it. Plaintiffs acknowledge the release and discharge set forth above is a general release and includes without limitation a release and waiver of all claims for attorney fees and costs relating to this litigation.  Plaintiffs expressly waive and assume the risk of any and all claims for damages that exist as of this date or that may hereafter arise out of the incident that was the subject of the lawsuit, but of which they do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect their decision to enter into this Agreement.

**Enforcement and Applicable Law.** Nothing in this settlement agreement is expressly or impliedly intended to confer any rights upon any person or entity other than the parties hereto. The right to seek judicial enforcement of this Settlement Agreement is vested exclusively in the parties. This Agreement shall be governed by and construed in accordance with the laws of the

State of Michigan. The parties further agree that the Michigan Court of Claims has full authority to enforce the terms and conditions of the Agreement and may issue any orders of compliance, costs, or fees related to the enforcement of the provisions of the Agreement.

Nothing in this Agreement will be construed to conflict with any provisions of Michigan law or the Michigan Constitution or any applicable court order, or to supersede or otherwise alter any applicable legal requirements.

**Authorization.** The signatories hereto represent and warrant that they have the authority to sign this Settlement Agreement on behalf of the respective Parties. The Settling Parties acknowledge that they have each read this Settlement Agreement, that they understand its meaning and intent, that they have executed it voluntarily and with opportunity to consult with legal counsel, and have participated and had an equal opportunity through counsel to participate in the drafting of this Settlement Agreement.

This agreement has been negotiated and drafted jointly by the Plaintiffs and the Executive Office of the Governor.  This agreement will not be construed against either party as the sole author or drafter. The parties agree to cooperate fully and execute any and all documents and to take all additional actions that may be necessary and appropriate to give full force and effect to the terms and intent of this Agreement.

**Beneficiaries.** This Agreement shall be binding on and inure to the benefit of the heirs, successors, and assigns of the parties hereto.

**Integration.**  This Settlement Agreement contains the entire agreement and understanding between the parties concerning the subject matter hereof, and any and all prior oral or written agreements or understandings between the parties related hereto are superseded.  No representations, oral or otherwise, express or implied, other than those specifically referred to in this Settlement Agreement, have been made by any party hereto

No amendments, waivers, or termination can be made to this Agreement, except in writing, signed by each of the parties.

**Severability.**  If any portion of this Settlement Agreement is determined by a court or other government body of competent jurisdiction to be void or otherwise invalid and hence, unenforceable, such invalid or void portion shall be deemed to be separate and severable from the balance of this Settlement Agreement, and neither that portion, nor its severance or deletion, shall affect the validity of the remaining provisions of this Settlement Agreement.

**Counterparts.** The Settlement Agreement may be signed in separate counterparts, each of which shall be deemed an original, and said counterparts shall together constitute one and the same Settlement Agreement, binding all parties hereto notwithstanding that all of the parties are not signatory to the original or the same counterpart.

**Confidentiality of Plaintiffs' Names.** The identities of Plaintiffs and their guardians ad litem, as disclosed in confidential Exhibit A to this Settlement Agreement, are confidential and shall not be disclosed to any persons other than the Parties and their counsel.

**Execution.** The Settlement Agreement shall be deemed fully executed as of the date of the last signature.

Dated: May __, 2020   Gretchen Whitmer

_____

Governor, State of Michigan

EXHIBIT A: CONFIDENTIAL — NAMES AND SIGNATURES OF ALL PLAINTIFFS

EXHIBIT A: CONFIDENTIAL — NAMES AND SIGNATURES OF ALL PLAINTIFFS