# United States Court of Appeals
## For the First Circuit

No. 20-2082

A.C., a minor, by her parent and guardian ad litem, Torrence S.
Waithe; A.C.C., a minor, by her parent and guardian ad litem,
Nicolas Cahuec; A.F., a minor, by his parent and guardian ad
litem, Aletha Forcier; R.F., a minor, by her parent and guardian
ad litem, Aletha Forcier; I.M., a minor, by his parents and
guardians ad litem Jessica Thigpen and Anthony Thigpen; L.M., a
minor, by her parents and guardians ad litem Jessica Thigpen and
Anthony Thigpen; K.N.M.R., a minor, by her parent and guardian
ad litem, Marisol Rivera Pitre; J.R.H., a minor, by her parents
and guardians ad litem, Moira Hinderer and Hillary Reser; M.S.,
a minor, by his parent and guardian ad litem, Mark Santow;
M.M.S., a minor, by his parent and guardian ad litem, Amie Tay;
M.S., a minor, by her parents and guardians ad litem, Maruth Sok
and Lap Meas; A.W., a minor, by her parent and guardian ad
litem, Chanda Womack; J.W., a minor, by her parent and guardian
ad litem, Chanda Womack; N.X., a minor, by her parents and
guardians ad litem, Youa Yang and Kao Xiong,

Plaintiffs, Appellants,

v.

DANIEL J. MCKEE,[*] in his official capacity as Governor of the
State of Rhode Island; NICHOLAS A. MATTIELLO, in his official
capacity as Speaker of the Rhode Island House of
Representatives; DOMINICK J. RUGGERIO, in his official capacity
as President of the Rhode Island Senate; RHODE ISLAND STATE
BOARD OF EDUCATION; COUNCIL ON ELEMENTARY AND SECONDARY
EDUCATION; ANGELICA INFANTE-GREEN, in her official capacity as
Commissioner of Education for the State of Rhode Island,

Defendants, Appellees.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Governor Daniel J.
McKee has been substituted for former Governor Gina M. Raimondo as
the lead defendant-appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Howard, Chief Judge,
Kayatta, Circuit Judge,
and Casper,** District Judge.

Michael A. Rebell, with whom Center for Educational Equity, Teachers College, Columbia University, Jennifer L. Wood, Rhode Island Center for Justice, Samuel D. Zurier, and Stephen Robinson, and Robinson & Clapham, were on brief, for appellants.

Michael W. Field, Assistant Attorney General, with whom Andrea M. Shea and Keith Hoffmann, Special Assistant Attorneys General, were on brief, for appellees Daniel J. McKee, Nicholas A. Mattiello, and Domenick J. Ruggerio.

Anthony F. Cottone, Chief Legal Counsel, Rhode Island Department of Education, for appellees Rhode Island Board of Education, Council on Elementary and Secondary Education, and Angélica Infante-Green.

William T. Russell, Jr., David Elbaum, Jonathan T. Menitove, Nicholas L. Ingros, and Simpson Thacher & Bartlett LLP on brief for Professors Danielle Allen and Meira Levinson, amici curiae.

Yahonnes Cleary, Erin J. Morgan, Alexander F. Atkins, Carly Lagrotteria, David Fu, and Paul, Weiss, Rifkind, Wharton & Garrison LLP on brief for National Council for the Social Studies, amicus curiae.

Andrew M. Troop, Jeffrey P. Metzler, and Pillsbury Winthrop Shaw Pittman LLP on brief for National League of Women Voters, League of Women Voters of Rhode Island, and American Civil Liberties Union of Rhode Island, amici curiae.

Robert M. Kline, Kristin A. Taylor, Carlos F. Ortiz, Michael W. Weaver, Dana McSherry, Annabel Rodriguez, McDermott Will & Emery, Jose Perez, Francisca D. Fajana, Miranda Galindo, and LatinoJustice PRLDEF on brief for LatinoJustice PRLDEF, et al., amici curiae.

Gilda Daniels, Jessica Alcantara, Ky'Eisha Penn, Advancement Project, Janette Louard, Anthony Ashton, Victor L. Goode, National

---

** Of the District of Massachusetts, sitting by designation.

Association for the Advancement of Colored People, Jeremy Karpatkin, Raqiyyah Pippins, Florence Bryan, Danielle Pingue, Saul P. Morgenstern, Jonathan Green, Peter L. Schmidt, Javier Ortega, and Arnold & Porter Kaye Scholer LLP on brief for Advancement Project and NAACP, amici curiae.

    Nowell D. Bamberger, Leila Mgaloblishvili, Tony J. Russo, and Cleary Gottlieb Steen & Hamilton LLP on brief for Generation Citizen and Mikva Challenge, amici curiae.

    Yelena Konanova, Jordan W. Garman, and Selendy & Gay PLLC on brief for Professor Martha Minow, amicus curiae.

    Michael M. Epstein, Julie K. Waterstone, and Amicus Project at Southwestern Law School on brief for Samantha M. Dennis, et al., amici curiae.

    S. Elaine McChesney, Robert E. McDonnell, Elizabeth M. Bresnahan, Michael A. Hacker, and Morgan Lewis & Bockius LLP on brief for Providence Youth Student Movement, et al., amici curiae.

    Jeffrey A. Simes, Allison R. Klein, and Goodwin Procter LLP on brief for National Association for Media Literacy Education, et al., amici curiae.

    Andrew J. Ceresney, Jillian L. Trezza, Amy C. Zimmerman, Erik Rubinstein, and Debevoise & Plimpton LLP on brief for The Campaign for the Civic Mission of Schools, et al., amici curiae.

January 11, 2022

**Casper**, **District Judge**.  This appeal raises the question of whether Rhode Island's alleged failure to provide public school students with an adequate civics education can state a claim for violation of the students' constitutional rights.  On behalf of a putative class of "all students attending public K-12 schools in Rhode Island . . . who are not receiving a meaningful opportunity to obtain the degree of education that is necessary to prepare them to be capable voters and jurors, to exercise effectively their right of free speech, to participate effectively and intelligently in our open political system and to function productively as civic participants," several students ("Appellants" or "Students") brought an action for declaratory relief against the Governor and various Rhode Island officials and agencies ("Rhode Island") under the Equal Protection, Due Process, and Privileges and Immunities Clauses of the Fourteenth Amendment to the U.S. Constitution, and the Republican Guarantee Clause of Art. IV, § 4 of the U.S. Constitution, all of which the district court dismissed.[1]  A.C. v. Raimondo, 494 F. Supp. 3d 170, 175 (D.R.I. 2020).  For the reasons that follow, we affirm.

I.

Following a district court's grant of a motion to

---

[1] Appellants do not appeal the district court's dismissal of their Sixth and Seventh Amendment, and Jury Selection and Service Act claims.

- 4 -

dismiss, we recite the facts as well-pleaded in the complaint. Zhao v. CIEE Inc., 3 F.4th 1, 4 (1st Cir. 2021). Appellants live in and attend (or will attend) public schools in Rhode Island, spanning preschool through twelfth grade, and allege that Rhode Island has failed to provide them with an education "adequate to prepare them to function productively as civic participants capable of voting, serving on a jury, understanding economic, social and political systems sufficiently to make informed choices, and to participate effectively in civic activities."

The Students point to several components of Rhode Island's approach to civics education that have caused the alleged failure. First, Rhode Island does not require any civics courses, although some high schools in more affluent districts offer elective civics courses, nor does the state mandate testing for civics knowledge at the high school level or report student performance in these subjects, unlike reading, math and science. Due to limited time and resources, schools thus focus on these mandatory subjects that are tested statewide. Second, Rhode Island's current civics curriculum falls short. It has not adopted the College, Career and Civic Life ("C3") framework for teaching civics, which various educators and policy organizations have endorsed. When courses do address civics concepts, the content is not as comprehensive as the C3 framework would provide. Moreover, current courses do not promote active classroom

- 5 -

discussion of "controversial topics" and do not teach students media literacy to navigate today's digital world. Third, Rhode Island has neglected to update civics-related materials and access to digital resources, and to train and hire teachers and other personnel, including a statewide social studies specialist, in civics education. Fourth, schools provide limited opportunities for civic experiences, like student council, student newspapers and field trips, and civic learning, which combines community service with classroom discussions.

As to the effect of the lack of civics education, the Students cite national studies reporting a lack of civic knowledge, and a disinterest and lack of participation in civic life (e.g., voting and volunteering) among young Americans when compared to previous generations. They also point to the "civic empowerment gap" for many African American and Latino students and students from low-income families, citing demographic analysis of the results of civics knowledge testing done on a national sample of eighth graders.

## II.

We review the district court's grant of Rhode Island's motion to dismiss de novo. Gaspee Project v. Mederos, 13 F.4th 79, 84 (1st Cir. 2021).

### A.

The Students appeal the district court's conclusion that

an adequate civics education is not a fundamental constitutional right, which was fatal to their Substantive Due Process and Equal Protection claims.[2]  See A.C., 494 F. Supp. 3d at 193.

We turn first to the Supreme Court's precedent regarding the existence *vel non* of a fundamental right to education.  Dating back at least to Brown v. Board of Education, the Supreme Court has characterized education as "the most important function of state and local governments," and as the "very foundation of good citizenship," which is "required in the performance of our most basic public responsibilities." San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 29-30 (1973) (quoting Brown v. Bd. of Ed., 347 U.S. 483, 493 (1954)); see Plyler v. Doe, 457 U.S. 202, 221-23 (1982) (noting Court's recognition of education as a vital civic institution for preservation of American democracy).  Nevertheless, the Court has distinguished the relative importance of education and its role in society from the fundamental rights inquiry under the Fourteenth Amendment and looked to whether it was "explicitly or implicitly guaranteed by the Constitution."

---

[2] We acknowledge and thank amici curiae Professors Danielle Allen and Meira Levinson, National Council for the Social Studies, National League of Women Voters of Rhode Island, American Civil Liberties Union of Rhode Island, LatinoJustice PRLDEF, et al., Advancement Project and NAACP, Generation Citizen and Mikva Challenge, Professor Martha Minow, Samantha M. Dennis, et al., Providence Youth Student Movement, et al., National Association for Media Literacy Education, et al., and The Campaign for the Civic Mission of Schools, et al., for their respective briefs in support of Appellants.

Rodriguez, 411 U.S. at 30, 33 (citations omitted) (explaining that "the importance of a service performed by the State does not determine whether it must be regarded as fundamental"). Conducting that analysis in Rodriguez, where Texas children challenged the state's increasing reliance upon local property taxes to fund its public schools, thus favoring wealthy districts, the Court held that education in general was not so guaranteed. Id. at 35-37. Furthermore, the Court explicitly rejected the petitioners' argument that "education is itself a fundamental personal right because it is essential to the effective exercise of First Amendment freedoms and to intelligent utilization of the right to vote." See Rodriguez, 411 U.S. at 35-36. In so doing, the Court recognized that the Constitution does not guarantee "the most effective speech or the most informed electoral choice." Id. at 36. Thus, in the absence of an "*absolute denial* of . . . an opportunity to acquire the basic minimal skills necessary for the enjoyment of [these] rights," the Court determined that no fundamental right was implicated by Texas's school-funding scheme. Id. at 36-37 (emphasis added).

Appellants here read Rodriguez to suggest that, if properly alleged, we may conclude that the Constitution protects the specific right to a civics education that prepares them to participate effectively in these important aspects of public life (e.g., voting or other civic participation). We read the language

- 8 -

in Rodriguez, however, to reject this proposition. See id. Since Rodriguez, the Court has not only reaffirmed its central holding, but also clarified that the decision left open only the question, as relevant here, of "whether a minimally adequate education is a fundamental right . . . ." Papasan v. Allain, 478 U.S. 265, 285-86 (1986); Kadrmas v. Dickinson Pub. Sch., 487 U.S. 450, 466 n.1 (1988) (Marshall, J., dissenting). In Papasan, the Court declined to resolve this question directly, because it determined that the petitioners had failed to allege that they had been "deprived of a minimally adequate education." Papasan, 478 U.S. at 286. In so doing, the Court clearly suggested that such a deprivation may only be "possib[le]" in the case of a "radical denial of educational opportunity," such as where "schoolchildren . . . are not taught to read or write" or "receive no instruction on even the educational basics." Id. at 284, 286. As the Court explained, the petitioners' factual allegations regarding school-funding disparities simply failed to plead such a claim.

Here, much like the petitioners in Papasan and Rodriguez, the Students do not plausibly allege that they were "deprived of a minimally adequate education," i.e., state action tantamount to a "radical" or "absolute denial" of *any* "educational opportunity." See Papasan, 478 U.S. at 284, 286; Rodriguez, 411 U.S. at 37. Instead, their complaint alleges that Rhode Island's policies vis-à-vis civics-related curriculum is substantively

- 9 -

inadequate to prepare them for meaningful civic engagement as adults, whether through insufficient course offerings and extracurricular activities, or that state standards do not conform to the C3 framework that educators and policy organizations have endorsed. But as we have discussed, the Court rejected a similar argument in Rodriguez. See Rodriguez, 411 U.S. at 35-36 (rejecting the argument that a "nexus between speech and education" or between the "right to vote . . . [and] the educational foundation of the voter" creates a fundamental right to education, generally). And the Court has never suggested that the minimum "quantum of education" that *could be* constitutionally required must necessarily include instruction in certain subject matters or ensure certain educational outcomes (perhaps with the exception of an opportunity for basic literacy). See Papasan, 478 U.S. at 286; Plyler, 457 U.S. at 222 (declining to recognize a fundamental right to education but applying heightened scrutiny to a *complete* "denial of basic education" to undocumented children, noting that "[i]lliteracy is an enduring disability . . . [that] will handicap the individual deprived of a basic education each and every day of his life"). Thus, as the district court aptly determined, the right to participate in a functioning democracy is "not wholly inaccessible without civics education." A.C., 494 F. Supp. 3d at

192-93.[3]

We also take judicial notice of relevant Rhode Island law, which has since 2007 required at least some civics education in its schools, even if it is not as comprehensive as the framework Appellants desire, and this law was amended recently during the pendency of this appeal to require civics proficiency, among other changes. See, e.g., R.I. Gen. Laws § 16-22-2 (2021) (requiring public schools to provide civics education as part of history and social studies curriculum, at least one student-led civics project during middle or high school and mandating civics proficiency beginning in 2022-23 academic year); 200-20 R.I. Code. R. § 10-1.2.1(F) (requiring local education agencies to develop social studies curriculum that includes "Civics & Government" coursework), § 10-2.3.1 (requiring local education agencies to

---

[3] The Students contend that the "central . . . issue presented by this case is the definition of the 'quantum of education' that they need to effectively exercise their constitutional rights," which they argue "can[not] totally omit" civics. In so doing, they rely upon dicta from Rodriguez and Papasan stating that the Court's decisions do not "foreclose the possibility 'that some identifiable quantum of education is a constitutionally protected prerequisite to the meaningful exercise of either [the right to speak or the right to vote].'" Papasan, 478 U.S. at 284 (quoting Rodriguez, 411 U.S. at 36) (alterations in original). They contend that discovery and a trial are necessary to define the contours of this theoretical, yet-to-be-recognized minimum "quantum." But as we have addressed, this issue is not implicated by their claims, was not before the district court, and we need not endeavor to answer it here. We merely hold that the district court correctly determined that required curriculum prioritizing civics-based courses does not fit through the "crack" left open by the Court's precedent. See A.C., 494 F. Supp. 3d at 189-93.

adopt graduation requirements including demonstration of proficiency in social studies).

For these reasons, this lawsuit stands in contrast to a case considered recently by the Sixth Circuit, upon which the Students heavily rely, where a panel majority concluded that students in Detroit Public Schools had plausibly alleged denial of their fundamental right to "a basic minimum education -- meaning one that plausibly provides access to literacy." Gary B. v. Whitmer, 957 F.3d 616, 648-49 (6th Cir. 2020), reh'g en banc granted, opinion vacated, 958 F.3d 1216 (6th Cir. 2020). Surveying legal and historical authority,[4] the court determined that access to literacy was a fundamental right because, in part, it is "viewed by our society as essential for students to obtain even a chance at political and economic opportunity." See id. at 649-52.

In that lawsuit, which now remains dismissed, the plaintiffs specifically alleged facts describing conditions in

---

[4] The Students here direct us to similar historical authority, namely the development of public education as commonplace at the state level, to argue that education was deeply rooted in the nation's history and tradition, particularly when the Fourteenth Amendment was ratified. See Barry Friedman and Sara Solow, The Federal Right to an Adequate Education, 81 Geo. Wash. L. Rev. 92 (2013); see also Brief of Professor Martha Minow, at 10-11. We need not dispute this proposition but note only that none of these historical arguments addresses whether civics education, *per se*, was deeply rooted in our nation's history, rather than public school education in general.

their schools that the students were not receiving a minimally adequate education:  a significant shortage of qualified teachers, unsanitary and dangerous conditions of school facilities (for example, extreme heat in the summer caused students and teachers to vomit and faint, and contaminated, undrinkable water), and a lack of grade-appropriate materials (if any).  Id. at 625-27, 661.  In other words, the Gary B. plaintiffs alleged a total deprivation of a minimally adequate education.  The Gary B. plaintiffs also cited data that showed "a zero or near-zero percentage of subject-matter proficiency among students at their schools," which was alone "not enough to state a claim, because the right to a basic minimum education cannot guarantee a specific educational outcome," but "support[ed] the inference that Plaintiffs' schools are woefully insufficient, especially when combined with qualitative descriptions of their classes' literacy shortcomings."  Id. at 661.

As described above, the complaint here fails to allege a total deprivation of a minimally adequate education (as opposed to specific subject-matter inclusion).[5]  See Papasan, 748 U.S. at

---

[5] Several amici also emphasize how the gap in educational offerings between Black and Latinx students and their White peers in more affluent districts negatively impacts proficiency among these groups of students, see Brief of LatinoJustice PRLDEF, et al., at 14-16 (citing statewide data in reading and math); Brief of Advancement Project and NAACP, at 17 (citing nationwide data in civics), but these statistics still do not suggest deprivation of a minimally adequate education due to Rhode Island's allegedly

- 13 -

285-86 (declining to engage in fundamental right to education analysis when plaintiffs did not allege that they were "not taught to read or write," or that they did not receive "instruction on even the educational basics").

For these reasons, we affirm the district court's conclusion that the students have not plausibly alleged the deprivation of a fundamental right.[6]

**B.**

In conducting our analysis of the Students' equal protection claim, we first consider the appropriate level of scrutiny to apply. See Plyler, 457 U.S. at 216-17; Toledo v. Sánchez, 454 F.3d 24, 33 (1st Cir. 2006). As a preliminary matter, we reject the Students' argument that strict scrutiny applies, since we concluded above that their allegations do not implicate a fundamental right. Moreover, the Students, suing on behalf of all public school students in Rhode Island, have not asserted that

---

inadequate civics curriculum.

[6] We need not engage in further analysis of whether a civics education is a fundamental right protected by the Constitution. See Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997) (articulating two-part test for recognizing fundamental rights by looking to history of asserted right). First, we determined above that Rodriguez forecloses such a conclusion. Second, we agree with Rhode Island that Appellants' historical evidence (and that of amici) focuses solely on public education in general (i.e., minimally adequate education), not civics curriculum. Even reaching such analysis, however, we adopt the district court's analysis under the Glucksberg framework. See A.C., 494 F. Supp. 3d at 193-94.

- 14 -

they should be considered a suspect class. See Toledo, 454 F.3d at 33.

The Students next argue that Plyler entitles them to some heightened standard of review. In Plyler, the Court "struck down under heightened scrutiny the exclusion of [undocumented] children from a free public education offered to other resident children as violative of equal protection." Id. (citing Plyler, 457 U.S. at 230).[7] We are not persuaded that Plyler's heightened standard of review applies here. First, the Plyler Court limited its application of heightened review to instances where the state "den[ies] a discrete group of innocent children the free public education that it offers to other children residing within its borders." Plyler, 457 U.S. at 230; see Toledo, 454 F.3d at 33 (citing Kadrmas, 487 U.S. at 459) (noting that since Plyler, the Supreme Court has employed rational basis to assess policies "that burden the educational opportunities of a non-suspect class" when those burdens were not outright exclusions). Second, Plyler applied heightened review to the exclusionary policy because it denied undocumented children a "basic education." Plyler, 457 U.S. at 223. Here, the Students allege neither that they comprise a discrete group of children (e.g., undocumented children),

---

[7] The specific test articulated in Plyler sounds in heightened rational basis review, where the exclusionary policy was not "rational unless it further[ed] some substantial goal of the State." Plyler, 457 U.S. at 224.

- 15 -

instead they represent all Rhode Island public school students, nor that they have been outright denied access to a basic education.

Accordingly, as there are no suspect classifications alleged or fundamental rights implicated, our equal protection review is "limited to a deferential, rational basis standard." D'Angelo v. New Hampshire Sup. Ct., 740 F.3d 802, 806 (1st Cir. 2014) (citation omitted). As the same applies to our substantive due process review, see Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 107 (1st Cir. 2015), we proceed accordingly.

### C.

In reviewing state action under the "forgiving [rational basis] standard," the state will prevail "so long as [it] articulates some 'reasonably conceivable state of facts that could provide a rational basis for the [action].'" Donahue v. City of Boston, 371 F.3d 7, 15-16 (1st Cir. 2004) (quoting FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993)); Mulero-Carrillo, 790 F.3d at 107 (applying same requirements at motion to dismiss stage). The Students argue that the district court erred when it dismissed their complaint under rational basis review without the chance to present evidence, but we have previously rejected this argument, for under rational basis review, "any plausible justification [from the state] will suffice, and effectively ends the analysis." Donahue, 371 F.3d at 15-16 (citations and internal

- 16 -

quotation marks omitted); Beach Commc'ns, Inc., 508 U.S. at 315 (explaining that rational basis does "not subject" action "to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data"); Toledo, 454 F.3d at 33 (dismissing equal protection claim where "rational bases for the actions are apparent from the face of the complaint"). Rhode Island asserts several justifications for its actions regarding civics education. First, Rhode Island notes that the state has not denied access to civics education, but rather that its laws indeed require civics education in some form. Second, Rhode Island contends that it has an interest in allowing curricular and extracurricular decisions to be made at the local level. Third, Rhode Island explains that to the extent it has favored certain classes over others, like science and math, those decisions were made to prepare students for the workforce or to comply with federal law that mandates testing in these areas.

As to local control, the Students contend that Rhode Island has substantial authority over education and "should exercise this existing supervisory authority to ensure that civics education is a high priority for all Rhode Island's schools," and that additional oversight of local education policy with respect to civics courses is more important than allowing school districts to make curriculum choices. These arguments again stress Appellants' preferred policy outcomes but fail to negate the

- 17 -

proffered rationality of local control over curriculum. Appellants do not otherwise attempt to negate Rhode Island's other justifications, instead focusing their arguments on the need for heightened review, which we rejected above.

The state's asserted reasons are at least "plausible," which satisfies the "forgiving" rational basis inquiry. Donahue, 371 F.3d at 15 (citations omitted). In particular, we note that states, and more so schools and teachers, must grapple with limited resources and time to educate their students, all while satisfying multiple demands, including mandated federal standards for testing and proficiency, which can affect their funding. We do not doubt the importance of the civics curriculum proffered by the Students and their amici, but we also do not doubt the importance of reading, science and math, both for providing a basic education and for preparing students to succeed in higher education and the workforce.

Finally, as to the equal protection claim, we note that the Students have also failed to tie the difference between their schools and more affluent ones (that do provide elective civics courses and experiences) to policies implemented or enforced by Rhode Island to create this alleged disparity, aside from mere mention that one district offers some optional courses. But to state an equal protection claim, the Students must connect the alleged disparity to a specific policy or action taken by Rhode

- 18 -

Island that caused these differences. See Toledo, 454 F.3d at 33-34. Here, they have not.

For these reasons, we affirm the district court's conclusion that Rhode Island's approach to civics education satisfies rational basis review.

## D.

We briefly address whether the complaint states a claim for relief under the Guarantee and Privileges and Immunities Clauses. As to the Guarantee Clause, we have noted that it "makes the guarantee of a republican form of government *to the states*; the bare language of the Clause does not directly confer any rights on individuals vis-á-vis the states." Largess v. Supreme Jud. Ct. for State of Mass., 373 F.3d 219, 224 n.5 (1st Cir. 2004) (emphasis in original). Even assuming *arguendo* that the Students had standing here, their Guarantee Clause claim fails on the merits. Any such claim "is restricted to *real threats* to a republican form of government." Largess, 373 F.3d at 227 (emphasis added); see New York v. United States, 505 U.S. 144, 185-86 (1992) (dismissing state's Guarantee Clause challenge to a federal regulatory scheme where the threats did not "pose any *realistic risk* of altering the form or the method of functioning of [the state's] government," noting that even under the scheme, the state "retain[ed] the ability to set their legislative agendas" and "state government officials remain[ed] accountable to the local electorate"

(emphasis added)). Even reading the complaint in the light most favorable to Students, it is not plausibly alleged that Rhode Island's failure to provide civics education here is a real threat to its republican form of government. The Privileges and Immunities Clause claim also fails because the clause "protects only those privileges and immunities that are 'fundamental,'" McBurney v. Young, 569 U.S. 221, 226 (2013) (quoting Baldwin v. Fish and Game Comm'n of Mont., 436 U.S. 371, 382, 388 (1978)), not present here, and also applies only when a state distinguishes among residents and nonresidents with respect to these fundamental interests. See Baldwin, 436 U.S. at 383 (collecting cases).

## III.

We conclude by echoing the district court's observations in dismissing this case, that the Students have called attention to critical issues of declining civic engagement and inadequate preparation for participation in civic life at a time when many are concerned about the future of American democracy. See A.C., 494 F. Supp. 3d at 175-76, 181, 197. Nevertheless, the weight of precedent stands in the Students' way here, and they have not stated any viable claim for relief.

We **affirm** the judgment of the district court.